# SUPREME COURT OF THE UNITED STATES

SCOTT HARRIS, IN HIS OFFICIAL CAPACITY AS
STATE HEALTH OFFICER, ET AL. *v.* WEST
ALABAMA WOMEN'S CENTER, ET AL.

ON PETITION FOR WRIT OF CERTIORARI TO THE UNITED
STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

No. 18–837.   Decided June 28, 2019

The petition for a writ of certiorari is denied.

JUSTICE THOMAS, concurring.

In 2016, Alabama adopted a law prohibiting "dismemberment abortion[s]." Ala. Code §26–23G–3(a). The law does not prohibit women from obtaining an abortion, but it does prevent abortion providers from purposefully "dismember[ing] a living unborn child and extract[ing] him or her one piece at a time from the uterus through use of clamps, grasping forceps, tongs, scissors, or similar instruments" that "slice, crush, or grasp . . . a portion of the unborn child's body to cut or rip it off." §26–23G–2(3). As the Court of Appeals explained, this method of abortion is particularly gruesome:

> "In this type of abortion the unborn child dies the way anyone else would if dismembered alive. It bleeds to death as it is torn limb from limb. It can, however, survive for a time while its limbs are being torn off. . . . At the end of the abortion—after the larger pieces of the unborn child have been torn off with forceps and the remaining pieces sucked out with a vacuum— the abortionist is left with a tray full of pieces." *West Alabama Women's Center* v. *Williamson*, 900 F. 3d 1310, 1319–1320 (CA11 2018) (citations and internal quotation marks omitted).

Dismembering a child alive is—in respondents' words— "the most commonly used second-trimester abortion method,"

and it "account[s] for 99% of abortions in the state from [15 weeks] onward." Brief in Opposition 1. Put differently, the more developed the child, the more likely an abortion will involve dismembering it.

The notion that anything in the Constitution prevents States from passing laws prohibiting the dismembering of a living child is implausible. But under the "undue burden" standard adopted by this Court, a restriction on abortion—even one limited to prohibiting gruesome methods—is unconstitutional if "the 'purpose or effect' of the provision 'is to place a substantial obstacle in the path of a woman seeking an abortion before the fetus attains viability.'" *Whole Woman's Health* v. *Hellerstedt*, 579 U. S. ___, ___ (2016) (slip op., at 1) (quoting *Planned Parenthood of Southeastern Pa.* v. *Casey*, 505 U. S. 833, 878 (1992) (plurality opinion); emphasis deleted). Here, abortion providers persuaded the District Court—despite mixed medical evidence—that other abortion methods were too risky, and the lower courts therefore held that Alabama's law had the *effect* of burdening abortions even though it did not prevent them. Ordinarily, balancing moral concerns against the risks and costs of alternatives is a quintessentially legislative function. But as the Court of Appeals suggested, the undue-burden standard is an "aberration of constitutional law." 900 F. 3d, at 1314; *Stenberg* v. *Carhart*, 530 U. S. 914, 982 (2000) (THOMAS, J., dissenting) (explaining that the standard "was constructed by its authors out of whole cloth").

This case serves as a stark reminder that our abortion jurisprudence has spiraled out of control. Earlier this Term, we were confronted with lower court decisions *requiring* States to allow abortions based solely on the race, sex, or disability of the child. *Box* v. *Planned Parenthood of Indiana and Kentucky, Inc.*, 587 U. S. ___, ___ (2019) (THOMAS, J., concurring) (slip op., at 2). Today, we are confronted with decisions *requiring* States to allow

THOMAS, J., concurring

abortion via live dismemberment. None of these decisions is supported by the text of the Constitution. *Gonzales* v. *Carhart*, 550 U. S. 124, 169 (2007) (THOMAS, J., concurring). Although this case does not present the opportunity to address our demonstrably erroneous "undue burden" standard, we cannot continue blinking the reality of what this Court has wrought.